ALFRED P. BLAIR and GENEVIEVE C. BLAIR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Blair v. Commissioner
Docket No. 3021-74.
United States Tax Court
T.C. Memo 1976-234; 1976 Tax Ct. Memo LEXIS 170; 35 T.C.M. (CCH) 1018; T.C.M. (RIA) 760234; July 27, 1976, Filed *170 William B. Wyllie, for the petitioners. Jan R. Pierce, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioners' 1972 income tax in the amount of $4,839.31. Concessions having been made, the sole issue remaining for our decision is whether payments received by petitioner Alfred P. Blair during 1972 were payments in consideration for a covenant not to compete, taxable as ordinary income. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife who resided at Salem, Oregon, at the time the petition was filed. Petitioners' cash basis Federal income tax return for 1972 was filed with the Internal Revenue Service Center, Ogden, Utah. Petitioner Alfred P. Blair (Blair) has been a state, corporation, association and private labor relations consultant since 1939. In May 1947, Blair organized Associated Products Manufacturers, Inc. (Associated), under the laws of the State of Washington. Blair became the secretary-treasurer and general manager of Associated. Associated was the predecessor of Cascade Employers Association, *171 Inc. (Cascade), a corporation formed under the laws of Oregon which continued Associated's non-profit labor relations consulting business. The transfer of the business from Associated to Cascade occurred in 1957 and petitioner remained an officer of Cascade through January 1972. Blair was one of those primarily responsible for the success of the business and, until October 1971, Blair was the chief executive officer of Cascade. Cascade is a non-profit corporation under Oregon law. The purpose of the business is to provide its clients with a service covering industrial, labor and governmental relations and group health and welfare insurance and pension programs. In October 1971, Blair was ousted as chief executive officer of Cascade and his relations with Cascade's board of directors deteriorated until his departure from Cascade in January 1972. On December 22, 1971, Blair and Cascade, both represented by attorneys, entered into a memorandum of agreement which terminated Blair's employment with Cascade as of January 1, 1972. The memorandum provides that "[in] recognition of the valuable past services of Blair and in consideration of the covenants and agreements" contained *172 in the memorandum, Cascade would pay Blair $23,000 in 1972 and $21,000 in 1973, 1974 and 1975. The core of the agreement is found in paragraph 8 of the memorandum. In paragraph 8 Cascade recognizes Blair's intent to "commence a separate consulting business" and agrees to allow Blair to represent certain of Cascade's clients known as the "Salem Group" in labor relations work. Payments for services rendered to the "Salem Group" during 1972 through 1975 offset dollar for dollar, during each respective year, the amount payable to Blair under the memorandum of agreement. The memorandum provides further that "Blair shall not represent any other present or future members of CEA [Cascade] * * * in any capacity or compete with CEA as to any such members directly or indirectly * * *." Paragraph 8 further states as follows: Blair agrees that the payments to him under paragraph 1 are in consideration of this limited non-competition agreement and a violation hereof may be grounds for an immediate termination of this Agreement by CEA. This covenant shall continue for a period of five (5) years from the date hereof. * * * Paragraph 13 of the memorandum provided for the continuing existence *173 and enforceability of "the covenant of Blair not to compete" for the five-year period in the event Blair defaulted on the agreement. Blair had a very good reputation as a labor relations consultant when his employment with Cascade was terminated. Cascade's board of directors sought to limit the effect of Blair's competition with Cascade as a labor relations consultant by the memorandum of agreement. It is stipulated that petitioners are entitled to claim their children Steven, Roberta and David as dependents for 1972, but are not entitled to claim James as a dependent for that year. It is also stipulated that petitioners are entitled to deduct $7,629.45 as business expenses in 1972 and are also entitled to deduct the following amounts as itemized deductions: $178.19 (medical); $1,662.73 (taxes); $142 (charitable contributions); $374.59 (interest). As an ultimate finding of fact we conclude that the amount Blair received from Cascade in 1972 was paid in consideration for his covenant not to compete. OPINION Petitioners bear the burden of proof in this case. Rule 142, Tax Court Rules of Practice and Procedure. Petitioners must adduce "strong proof" to show that Cascade's *174 payments to Blair were not in consideration of a covenant not to compete because such characterization is a variance of the literal terms of a written agreement. J. Leonard Schmitz,51 T.C. 306 (1968), affd. sub nom. Throndson v. Commissioner,457 F. 2d 1022 (9th Cir. 1972); Schulz v. Commissioner,294 F. 2d 52 (9th Cir. 1961); Ullman v. Commissioner,264 F. 2d 305 (2d Cir. 1959). Petitioners have wholly failed to carry their burden of proof, and we hold for the respondent. Blair and Cascade reached an agreement that terminated Blair's employment with Cascade and contained a covenant on Blair's part not to compete with Cascade for Cascade's clients for a period of five years. In exchange for giving this covenant, Blair received $23,000 in 1972 and was to receive $21,000 in each of the years 1973, 1974 and 1975. Petitioners argue [1] that the agreement was in substance a sale of Blair's interest in Cascade since he was largely responsible for Cascade's success, including its roster of clients. There is simply *175 insufficient evidence to support petitioners' theory. The record does not begin to show that the agreement was without any "independent basis in fact or * * * arguable relationship with business reality such that reasonable men, genuinely concerned with their economic future, might bargain for" the covenant. Schulz v. Commissioner,supra at 55; J. Leonard Schmitz,supra.
Petitioners presented no evidence to support any of their other claims beyond those conceded by the respondent in the stipulation and set forth in our findings of fact. Because of concessions, Decision will be entered under Rule 155. Footnotes
1. We glean this theory from Blair's testimony since no brief was filed for the petitioners.↩